## S. B. GREEN v. HENRY TOWER.

1. JUDGMENT—*Validity on its Face.*  A summons was issued by a justice of the peace and made returnable on June 4, 1886, at 10 o'clock A. M., and was regularly served, and judgment was afterward rendered against the defendants.  The record showing the manner of rendering the judgment reads as follows: "June 4, 1886, 10 o'clock A. M.  The plaintiff present by his agent, Geo. O. Lovett.  The defendants, being three times called, still fail to appear.  Upon hearing the proof and allegations of the plaintiff, I do render judgment by default.  It is therefore," etc.; and here follows the judgment.  *Held,* That it does not appear that the judgment is void upon its face for the reason that it was rendered one hour too soon, and before the justice of the peace had acquired sufficient jurisdiction to render it.

2. LEADING QUESTIONS—*No Prejudicial Error.*  It does not appear that any prejudicial error intervened on account of the court's permitting leading questions to be asked.

3. SPECIAL VERDICT—*Sufficiency.*  Each of two partners signed a promissory note, but signed it in such a manner that the note appeared to be signed in the name of the firm, though the transaction had no connection with the partnership business.  The following special interrogatory was submitted to the jury: "Was it a partnership or an individual liability?" and the jury answered as follows: "Each individually signed the note."  *Held,* Under the facts of this case, that the court did not err in refusing to require the jury to give a more definite answer.

*Error from Greenwood District Court.*

ACTION by *Tower* against *Green* to recover money. Judgment for the plaintiff, at the January term, 1889. The defendant comes to this court. The opinion, handed down July 8, 1892, states the material facts.

*Clogston, Hamilton, Fuller & Cubbison,* for plaintiff in error:

1. The plaintiff in error complains of the introduction of the judgment in evidence, pretending to show a judgment in favor of H. C. Jackson, and against Henry Tower and S. B. Green. This judgment upon its face shows that this cause was duly set for trial June 14, 1886, at 10 o'clock A. M.; it also appears that defendants failed to appear. The plaintiff was present by his attorney, and at 10 o'clock A. M. the defendants were three times called, and failed to appear, and judgment was rendered against the defendants. This judgment upon its face shows that it was rendered at least one hour before the justice had power to hear and determine the cause. Section 83 of the justices' code gives the justice the right to proceed in the absence of the defendants, if they fail to appear at the time specified in the summons, or within one hour thereafter. Then he has authority to proceed; otherwise he has no authority to proceed whatever, and a judgment rendered before a justice had authority to render a judgment makes a judgment on its face absolutely void.

2. Plaintiff, defendant in error, was called as a witness on his own behalf, and, in his examination, all the questions, or nearly all asked of him, were leading. He was an interested party, and the defendant had a right to have him tell his story without being helped by the counsel. The defendant below objected to the leading questions, and such objections were overruled by the court.

3. The defendant requested the jury to answer certain questions, which were as follows: "(1) Was the note in controversy signed by Tower & Green as sureties? A. It was. (2) Was it a partnership or individual liability? A.

Each individual signed the note. (3) When the partnership was dissolved, who assumed the liability of the partnership? A. Tower. (4) Who signed the note in controversy as principal? A. Pees."

We call the court's special attention to the second question and answer. The question to be determined, and of vital importance under the evidence and instructions of the court, was whether or not this was a partnership liability or an individual liability. For if this was a partnership liability, (and *prima facie* it was, because it was signed in the firm-name of Tower & Green,) the defendant had a right to have that question definitely answered; and when they answered that each individual signed the note, it was not answering that question, because the evidence does show that Tower wrote the word "Tower," and Green at the request of Tower wrote the words "& Green," making the complete words of "Tower & Green," being the partnership name, under which they were doing business; and because of the fact that each signed a part of the firm-name would not make it an individual liability any more than it would make it a firm liability. The court instructed the jury that the fact that the note was signed in the firm-name was *prima facie* evidence that it was a firm liability; but that *prima facie* fact might be overcome by other testimony, and the burden was on the plaintiff to show it. There was evidence introduced by the plaintiff and defendant tending to show whether or not it was a firm or individual liability. This was the fact that the jury must find, and it was a proper question under the evidence to submit to the jury. The court submitted this question, but refused to compel them to definitely and certainly answer the questions. The defendant, after this verdict and questions were brought in, moved the court to require the jury to answer more definitely and certainly these questions, and the court overruled this motion, which we say was error. There was evidence offered both by plaintiff and defendant relative to the manner of signing the note, and the court ought not to have permitted the jury to evade answering that question, because there was

no evidence in this record offered by the plaintiff to show that there was a liability on the part of each of the partners — not evidence sufficient to overcome the *prima facie* evidence of the note having been signed in the firm's name.

*W. S. Marlin*, for defendant in error:

1. The action upon which Tower recovered his judgment below is founded upon an implied contract for contribution. If no judgment had ever been rendered, and Tower had paid the note, the suit would not have been founded on the note, but rather on an implied promise to pay an equitable share due, and the note would in such a case only be a part of the evidence to prove such a contract. The bill of particulars sets out the note in full, and it was introduced in evidence at the trial. The evidence shows that Tower paid the note and judgment. If there was error in the introduction of the judgment, it was immaterial.

The judgment is not void, and it is questionable if it is voidable. The court had jurisdiction of both the subject-matter and the parties to the suit. Section 83 of the justices' code provides: "If either party fail to appear at the time specified in the summons, or within one hour thereafter, etc., the cause may proceed, at the request of the adverse party." That language has real force only in cases of default, wherein, notwithstanding such default, evidence must be introduced upon an issue to be tried. There was not, and could not have been, an issue in this case to be tried until the defendants appeared. The note was the bill of particulars, and proved itself, and the plaintiff need not have appeared at all to have gotten his judgment; hence, in that case, Jackson need not have requested the "cause to proceed." Section 83 is not applicable. In other words, that section does not govern in cases brought upon promissory notes and duly-verified accounts, upon which judgments may be taken upon default without evidence. Said section applies to such actions upon which there is to be a trial of an issue of fact, even if default be made by defendant or plaintiff. Section 73 of the

justices' act provides that the defendant's bill of particulars must be filed at or before "the hour named in the summons for the appearance of the defendant, unless further time be given for good cause shown." See 12 Am. & Eng. Encyc. of Law, 471, note 2.

The intention of the law evidently is, that if defendants mean to have a trial in cases where an affirmative defense must be set up and proven (or judgment can be taken upon default without evidence), that such a defense must be pleaded at or before the hour named in the summons. After such a defense has been pleaded, and in all cases where plaintiff must introduce evidence, the defendant has one hour after the hour named in the summons to come in and defend. Again, the record shows that the hour named in the summons had arrived before the case was called. After that time the defendants were three times called. It may have been an hour after the first calling until the defendants were called the third time. Certainly everything was done after the hour named in the summons.

If the court does not get jurisdiction of the parties "at the hour named in the summons to appear," why should the statute read, "If either party fail to appear at the time specified in the summons"? If that section is applicable, and plaintiff in error is right in his contention that the judgment is void, this court must hold the words "at the time specified in the summons," meaningless.

2. Plaintiff in error cites no particular instance wherein he was prejudiced by any leading question asked Tower. The trial court in the exercise of its discretion may permit leading questions. That is the way to expedite the business of a court. Unless the trial court grossly abused its discretion, the error, if any, will not be here noticed. And if this court were sitting as a trial court, it would permit all the questions complained of to be answered.

3. Plaintiff in error, unintentionally, doubtless, misprints the answer of the jury to the second special question. The answer as printed in brief is, "Each individual signed the

note;" whereas the answer as shown in the record, and as really returned by the jury, is, "Each *individually* signed the note." The court will notice that the question asked, to wit: "Was it a partnership or individual liability?" involves a conclusion of law rather than of fact. The jury can be required to answer only conclusions of fact, and not conclusions of law. See Civil Code, § 286. Now, so far as that question may be considered a question of fact, the answer is fair, unevasive, and true. See Webster's definition for "individually." The word "individually" indicates that the jury found that they did not sign the note intending to create a firm liability, but that each intended to create an independent personal liability. "Individually" indicates the manner of the signing rather than who signed it.

The record shows that the court might have properly directed the verdict for Tower, except for the defense that Pees had paid Tower. Green admitted the substantive facts upon which either a jury or a court must be bound to find for Tower. Green admits that he and Tower were sureties, and that they each signed the note. Tower signed "Tower," and Green signed "& Green," making their names appear as a firm. Green further admits that Tower paid the indebtedness, and that this indebtedness had nothing to do with the "general hardware business," in which the two men were engaged. It was no part of that business to indorse notes. The note in question was not entered among the bills payable or bills receivable of the firm. It was not taken into account at the time of the firm's dissolution. It was not then due, and Pees had paid a prior similar note. There was no presumption, then, that Pees would not pay it. It is not reasonable that Tower, in the contract for dissolution, was paid by Green to assume a debt which neither expected to pay. Now the answer to the question in any event can only be important to throw light on this question: "Was this note a part of the settlement of the hardware business?" The notice of dissolution referred only to the hardware business. Unless it can be fairly shown that in the settlement of the hardware

business that note was considered and settled for between the parties, it must follow that Green never paid Tower anything to assume it. And Green tacitly admits that no such payment was made.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought in the district court of Greenwood county on January 20, 1887, by Henry Tower against S. B. Green, to recover $155.15, alleged to be half the amount, with interest and costs, of a certain debt which Daniel Pees owed to H. C. Jackson, and for which Tower and Green were sureties, and which Tower was compelled to pay, Pees being insolvent. The case was tried before the court and a jury, and the jury found generally in favor of the plaintiff and against the defendant, and assessed the amount of the plaintiff's recovery at $95.60; and also, in answer to certain special interrogatories submitted to them, made special findings; and the court rendered judgment in accordance with the general verdict; and the defendant, as plaintiff in error, brings the case to this court for review.

It appears that originally, and from December, 1884, to August 22, 1885, the plaintiff and the defendant were partners, engaged in a general hardware business at Madison, under the firm-name of Tower & Green. Pees purchased a team of horses of Jackson upon credit, it being understood beforehand that both Tower and Green would become sureties for the amount. Afterward, and on April 18, 1885, Pees gave the promissory note now in question (and two others) to Jackson for $135, due in 12 months after date, payable at the Emporia National Bank, and drawing interest at the rate of 12 per cent. per annum. Pees signed his name thereto, and then Tower wrote under Pees' name "Tower," and then Green wrote, "& Green," immediately following the word "Tower," so that the firm-name of Tower and Green, to wit, "Tower & Green," appeared to be signed to the note. All this seems to have been for the accommodation of Pees alone. Tower and Green received no consideration for their signa-

tures; and the transaction had no connection with the partnership affairs. On August 22, 1885, the firm of Tower & Green was dissolved, and by the terms of the dissolution Tower was to continue the business and Green was to retire, all of which was done, and Tower was to collect the partnership accounts, settle the partnership business, and assume and pay the partnership debts. In addition to this, on September 4, 1885, Tower gave to Green a receipt for $265.06, in full of all accounts to date. Afterward, and on June 4, 1886, Jackson recovered a judgment before a justice of the peace upon the aforesaid note against Pees and Tower and Green for the amount of $152.22, and execution was issued thereon, and Tower paid the same, with costs, amounting to $162.82; and Pees being insolvent, Tower commenced this action in the district court against Green, his co-surety, for contribution. The general verdict and special findings of the jury, omitting title and signatures, read as follows:

"VERDICT: We, the jury in the above-entitled cause, do upon our oaths find for the plaintiff, and assess the amount of his recovery at $95.60."

"SPECIAL FINDINGS.

"1. Was the note in controversy signed by Tower & Green as sureties? A. It was.

"2. Was it a partnership or an individual liability? A. Each individually signed the note.

"3. When the partnership was dissolved, who assumed the liabilities of the partnership? A. Tower.

"4. Who signed the note in controversy as principal? A. Pees.

"5. If you find that the plaintiff has paid any part of the judgment, when did he pay it? A. August 6, 1886.

"6. If you find that Daniel Pees is principal, was he solvent or insolvent at the time of the commencement of this action? A. Insolvent.

"7. If you find that Daniel Pees is principal upon the note in controversy, what demand, if any, has the plaintiff made of said Pees for the repayment of the money plaintiff has paid out on the judgment sued on? A. The evidence does not show any demand.

"8. If Daniel Pees gave a chattel mortgage to Henry Tower, what was said chattel mortgage given for — that is, to secure the payment of what? A. To secure the payment of a note of $141 and some cents."

The above-mentioned chattel mortgage and note of $141 have nothing to do with this case.

The first alleged error is, that the court below permitted a transcript of the aforesaid judgment to be introduced in evidence, which transcript it is claimed showed upon its face that the judgment was rendered one hour too soon, and before the justice of the peace had acquired sufficient jurisdiction to render it; and therefore it is claimed that the transcript showed that the judgment was void. It appears that the summons was made returnable on June 4, 1886, at 10 o'clock A. M. There is no question with regard to the service, but the only alleged irregularity is that the judgment was rendered too soon. The record with reference to the manner of rendering the judgment reads as follows: "June 4, 1886, 10 o'clock A. M. The plaintiff present by his agent, Geo. O. Lovett. The defendants, being three times called, still fail to appear. Upon hearing the proof and allegations of the plaintiff, I do render judgment by default. It is therefore," etc.; and here follows the judgment.

Sections 73 and 83 of the justices' act read as follows:

"SEC. 73. The bill of particulars of the plaintiff must be filed at the time the action is commenced, and that of the defendant must be filed at or before the hour named in the summons for the appearance of the defendant, unless further time be given by the justice, for good cause shown."

"SEC. 83. If either party fail to appear at the time specified in the summons, or within one hour thereafter, or fail to attend at the time to which the trial has been adjourned, or fail to file the necessary bill of particulars, the cause may proceed at the request of the adverse party; and in all cases where a counterclaim or set-off has been filed before the dismissal of the cause by the plaintiff, the defendant shall have the right to proceed with the trial of his claim."

Now, it does not appear from the record that any one of

the defendants in the justice's court filed any bill of particulars "at or before the hour named in the summons for the appearance of the defendants," or at any other time, as prescribed by § 73 of the justices' act. Nor does it appear that any one of the defendants made any appearance in the case at any time during the day on which the case was set for trial, or at any other time. Nor does it conclusively appear that the judgment was rendered within less than an hour after the time specified in the summons for the appearance of the parties, and all presumptions should be in favor of the regularity of the proceedings, and not against them. Besides, we do think that the justice of the peace was without jurisdiction to render a judgment prior to the expiration of the hour. Of course, in cases where the defendants do not appear, the judgment should not be rendered until the hour has elapsed; but if the defendants do not appear at all what difference can it make? Besides, it makes but very little difference in the present case whether the judgment shall be considered as void or as valid, for the debt was valid and Tower paid it, and he is now entitled to contribution.

The next alleged error is with regard to the court's permitting leading questions to be asked, but as no particular leading question is designated, we do not think that it is necessary to make any comment. We might say, however, that we have not observed any prejudicial error in this regard.

The next and last alleged error is the court's refusal to require the jury to answer the second question submitted to them more specifically and definitely. The court instructed the jury substantially that the fact that the note was signed in the firm-name was *prima facie* evidence that it was a firm liability, but that this *prima facie* fact might be overcome by testimony, and that the burden of proof was upon the plaintiff, so that evidently the jury understood what was intended to be submitted to them by the question; and they answered accordingly. The question was substantially to ascertain whether the note in question constituted a partnership liability or an individual liability; and the jury by their answer

unquestionably intended to say that it constituted only an individual liability and not a partnership liability; and such we think was intended to be the case by Tower and Green, not only when they signed the note, but also when they dissolved their partnership. Evidently, when they dissolved their partnership they did not have in contemplation this note. This note was not due at the time, nor for about eight months afterward. They were not the principals on the note, but were merely sureties, and in all probability neither of them at that time had the slightest supposition that either would ever be required to pay anything on the note. At the time this note was given, two other notes of the same kind were also given, one of which was paid by Pees before the dissolution of the copartnership, and the other was paid by him afterward. After the dissolution, and after the payment of this second note, but before the third one, the one now in controversy, became due, which was about eight months after the dissolution of the copartnership, Pees became insolvent and could not pay such third note. We think that the answer of the jury to the second question was sufficiently definite and certain, and sufficiently intelligible to be understood, and the court below did not err in refusing to require the jury to make a more certain and definite answer.

The judgment of the court below will be affirmed.

All the Justices concurring.